(101 App. Div. 444)

## SCHAPIRO v. LEVY.

(Supreme Court, Appellate Division, First Department. February 10, 1905.)

1. MASTER AND SERVANT—DEFECTIVE APPLIANCES—EVIDENCE—SUFFICIENCY.

In an action by a servant for personal injuries caused by the breaking of a handle on a milk can, evidence *held* insufficient to show negligence on the part of defendant.

.2. SAME—EVIDENCE OF REPAIRS—INSTRUCTIONS.

In an action by a servant for injuries caused by the breaking of a handle on a milk can, in which there was evidence that defendant had employed third parties to repair some of the cans, the books of such parties would .have been inadmissible to prove the truth of defendant's statements, or to show how many times the cans had been repaired, and hence instructions that failure to produce such books might be considered by the jury in determining whether plaintiff was entitled to recover were erroneous.

Appeal from Trial Term, New York County.

Action by Barnett Schapiro against Samuel Levy. From a judgment for plaintiff and from an order denying a motion for new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Otto A. Rosalsky, for appellant.
Jacob Rieger, for respondent.

McLAUGHLIN, J. Action to recover damages for personal injuries alleged to have been sustained by reason of defendant's negligence. At the time stated in the complaint the defendant was a wholesale dealer in milk, and in the prosecution of his business owned between 4,000 and 5,000 milk cans, known as the "New York City pattern." Each can had two iron handles attached to it, and, when filled with milk, weighed about 100 pounds. These cans, when filled, were shipped to the defendant from different places, and on their arrival at the place of shipment were placed upon heavy wagons, and then delivered to various retail dealers. The plaintiff at the time of the accident, and for about a year and a half prior thereto, had charge and was the driver of one of these wagons. On the morning of the accident, after loading the wagon with cans, he proceeded upon his route to distribute the milk among the customers of the defendant. In taking one of the cans from the wagon for this purpose, one of the handles gave way, the can fell, striking him upon the foot, and inflicting the injury of which he complains. He had a recovery, and the defendant has appealed.

In the complaint he charged that "the milk cans furnished by the defendant had ordinary handles thereon, and such cans were lifted and taken from the wagon furnished by the defendant to the plaintiff by being taken hold of by such handles, and such was and is the usual and only proper manner of handling such cans." At the trial he testified that during the time he had been in the employ of the defendant the handles upon the cans, so far as he had observed, were safe; that he had never known or heard of an accident of this kind; and that he did not observe anything wrong

about the can in question until the handle gave way. In stating how the accident occurred he said:

"I was standing at the time on the sidewalk, when I got hold of the can. * * * The first thing I did I took the can right this way (indicating) by the handles, to take it right off. I had to take it with both hands. It had two handles on the side. I did not take hold of both handles. I must take hold of one handle with the hand and take hold of the head with the other hand; that is, when I lifted it out of the wagon. After I got it out of the wagon, and wanted to leave it down on the sidewalk, I get hold of the handle. I had one handle in this one, and the other one by the top I took it. I held a handle with the right hand. Then it broke down, and fell right on my foot. The handle broke down, and the can fell right down on my foot. The iron ring of the handle broke. The tin that was on the can broke. The cans were made of tin. The handles were made of iron. The handle is held on to the can just like this—two handles holding it. The handles are fastened with two rivets holding the tin, and this iron handle runs through it. The tin broke."

This is all the evidence that was produced as to the condition of the can at or prior to the accident, and it scarcely needs argument or the citation of authorities to show that it is insufficient to sustain a verdict. There was no evidence which showed, or tended to show, whether the tin or handle had become weakened in any way by age or use, or what defect, if any, there was in either, or what, in fact, actually caused the handle to give way. The plaintiff. on entering and continuing in the employ of the defendant, assumed the risks incident to the handling of the cans, while the defendant was bound to furnish reasonably safe cans, and, if he did this, he was not liable for an injury resulting from the giving way of one of the handles, unless it appeared that he had been guilty of some act of omission or commission with reference thereto. There is no proof, nor is there a suggestion in the record, that the can, including the handle, when furnished by the defendant, was not perfect in every respect; nor is there any evidence which would justify a finding that proper care and inspection of the can were not thereafter made, or that there was any defect in it, except such as may be inferred from the handle giving way. Indeed, the only suggestion or explanation as to the cause of the accident is that given by the plaintiff himself and his witness Blumstein; and that is, that he undertook to lower the can from the wagon to the sidewalk by one handle, when, if the allegations of his complaint be true, the proper way of handling it was to take hold of both handles. The fact that the handle gave way was not, in and of itself, sufficient to justify a finding that the defendant had failed to perform the duty which he owed the plaintiff. It might possibly justify a finding that there was some defect in the can, but not that the defendant was responsible for it. Defendant was not responsible unless he had been negligent, and his negligence could not be presumed. It had to be proved. This was the basis of plaintiff's right to recover. De Graff v. N. Y. C. & H. R. R. Co., 76 N. Y. 125; Flood v. Western Union Telegraph Co., 131 N. Y. 603, 30 N. E. 196; Carlson v. Phœnix Bridge Co., 132 N. Y. 273, 30 N. E. 750; Dingley v. The Star Knitting Co., 134 N. Y. 552, 32 N. E. 35. This being the condition of the evidence at the close of plaintiff's

case and at the close of the whole case, defendant's motion to dismiss the complaint or for the direction of a verdict should have been granted, and the exceptions taken to a denial thereof were well taken.

The judgment must also be reversed for errors in the charge. Proof was admitted to the effect that the defendant employed third parties to repair some of the cans which he had in use, and the court, upon request of plaintiff's counsel, charged in different forms, in substance, that, if the books of such third parties had been produced, they would have been some evidence of the truth of the statements made by defendant as to how many times he had had the cans repaired, what repairs had been made, and that the nonproduction of such books might be considered by the jury in determining whether the plaintiff was entitled to recover. The defendant's counsel duly excepted to such instructions. The exceptions were well taken. The books, if produced, would have been inadmissible, and, had they been received, would not, so far as appears, have proven anything with reference to the can in question. Other errors are alleged, but it is unnecessary here to consider them, inasmuch as they are not likely to be presented upon another trial.

The judgment and order appealed from must be reversed, and new trial ordered, with costs to appellant to abide event. All concur.